UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ] <br> ] <br> v. ] <br> ] <br> GREGORY FLETCHER ] <br> ] | Criminal No.  19-CR-232(02) <br><br> Judge Sullivan |

**SENTENCING MEMORANDUM**

Defendant Gregory Fletcher, through undersigned counsel, respectfully submits the following memorandum in support of sentencing.

For the reasons stated below, Mr. Fletcher requests that the Court accept the plea agreement pursuant to Federal R. Cr. P. 11( c)(1)( c), and sentence Mr. Fletcher to a period of incarceration of 144 months (12 years), followed by five years of supervised release.  Mr. Fletcher submits that this sentence meets the goals of sentencing as delineated under 18 U.S.C § 3553(a). Mr. Fletcher requests that his sentence run concurrently to the Maryland sentence that he is presently serving.

### *I.  Considerations in Imposition of Sentence*

The Federal sentencing statute, 18 U.S.C. § 3553(a), requires that this Court impose a sentence that is ". . . sufficient but not greater than necessary" to comply with the purposes of sentencing as set forth in 18 U.S.C. §3553(a).

1

In United States v. Booker, 543 U.S. 220 (2005), the U.S. Supreme Court held that the U.S. Sentencing Guidelines are advisory only - not mandatory.   In Rita v. United States, 551 U.S. 338,351 (2007), the Supreme Court further explained that "...the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines should apply."  The court can no longer presume that a Guidelines sentence is the appropriate sentence.  To do so would be to take a large step in the direction of returning to the pre-Booker regime.  United States v. Pickett, 475  F.3d 1347 (D.C. Cir. 2007).

While this Court must still correctly calculate the guideline range, Gall v. United States, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, id. at 51; Nelson v. United States, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). Kimbrough v United States, 552 U.S. 85, 90 (2007).  The Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," id. at 49-50, and explain how the facts relate to the purposes of sentencing. Id. at 53-60; Pepper v. United States, 131 S. Ct. 1229, 124243 (2011).  The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing."  Id. at 101; Pepper, 131 S. Ct. at 1242-43.

A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter of policy.  Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Kimbrough, 552 U.S. at 101-02 (internal punctuation omitted)(citing Rita v. United States, 551 U.S. 338, 351 (2007)(district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").  As the Supreme Court held in Kimbrough, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes,

even in a mine-run case." Kimbrough, 552 U.S. at 91, 109-10; see also Spears v. United States, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range.").

The factors under 18 U.S.C. section 3553(a) to be considered in imposing a sentence that is sufficient but not greater than necessary to comply with the purposes of section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guidelines range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

### *II.  Sentencing Factors under 18 USC § 3553*

The factors below relate to the appropriate sentence of the Court given all factors in sentencing.

### A.    *Full Acceptance of Responsiblity*

Mr. Fletcher has pled guilty to multiple charges, including enhancements under United States Sentencing Guidelines (USSG).

By pleading guilty, Mr. Fletcher has fully accepted responsibility for his actions, sparing the Court, government and witnesses the cost and time of trial and trial preparation.

### B.    *Early Acceptance of Responsiblity*

Mr. Fletcher pled guilty to all charges at the earliest opportunity. He did not spend additional time for the government and court denying his involvement, requiring expensive and lengthy forensic testing, or preparing for motions or trial. He has also saved the complainants the time and stress of trial preparation.

### C.    *Family History and Background*

Mr. Fletcher had a very difficult family history, as noted in the presentence report. He never knew the identity of his father, and his entire family was subject to physical abuse by his stepfather. His sibling could not live with the family because his mother could not financially support her. Both his sister and daughter were tragically and violently killed.

Despite the personal tragedies in his life, he has been in a stable relationship for 17 years, with no indication of violence in that relationship, and in fact his friend states that he is "very nice, kind, considerate and respectful." His adult son has lived with him during two periods, and has been pursuing his career in the midwest for several years. The recommendation of Mr. Fletcher's partner that Mr. Fletcher needs counseling to deal with his past traumas is certainly accurate.

### D.    *Substance Abuse and Mental Health*

Mr. Fletcher has a lifelong history of addiction, clearly starting with a dysfunctional childhood. He started drinking when he was 12 years old, and injectinh heroin at age 14. Mr. Fletcher reports that as a teenager he had extended residential mental health treatment. PSR page 39, par. 160. The earliest Court supervision records available, in 1980, reflect that while still

4

a teenager, he was ordered to enter the Second Genesis residential drug treat prorgram. This was a long term residential program for drug addicts. But drug abuse, and as stated by his partner, demons from his past, continued to trail him. For example, when he was arrested in 1991, Mr. Fletcher had homemade crack pipes on his person. Mr. Fletcher was most recently released from incarceration in September 2016, but began testing positive for illegal drugs in May, 2017. Significantly, Mr. Fletcher did complete treatment as required by the probation office (PSR p. 28, par. 110), but unfortunately relapsed, leading to this case. To his credit, Mr. Fletcher has acknowledged his addiction history, as well as its relationship to mental health problems, and wants to take any programs while incarcerated which can stop the cycle of relapse. He realizes that this lifelong addiction is reflective of mental health issues which he must address in order to recover from his drug abuse.

### E. The Age of Mr. Fletcher

In addition to the impact of Mr. Fletcher's age on his risk of covid-19 infection, his age - almost 59 years old, is a consideration in sentencing. Even at the proposed 12-year sentence, Mr. Fletcher would be at least 70 years old before he is released from prison.

Life expectancy for black males is presently 71.9 years. National Vital Statistics Report, Vol. 68, No. 7, June 24, 2019, p. 5. Furthermore, according to a research article published in the American Journal of Public Health, there is a *2-year decline in life expectancy for every year served in prison*. The Dose–Response of Time Served in Prison on Mortality: New York State, 1989–2003, American Journal of Public Health, Evelyn J. Patterson PhD, February 06, 2013.

The combination of years of drugs abuse, the pandemic, and years of incarceration can be expected to further decrease his life expectancy. A 12-year sentence will give him at least some possibility of release into the community.

### F. The Impact of the Coronavirus Pandemic

The national emergency of the past few months has had a severe impact on the entire nation, but our nation's prisons and jails have been particularly susceptible to illness and

death. Mr. Fletcher has been incarcerated at the DC Department of Corrections since the inception of covid-19 cases at the Department of Corrections. The facility conditions, and rate of covid-19 infections, have been so dangerous, including the death of an imate from covid-19, that a civil lawsuit was filed on behalf of the inmates. Banks v. Brooks, DDC 20-cv-849. In Banks, the Court ordered independent amici curiae to inspect conditions at the facilities, and report back to the court. Based on that report, a temporary restraining order was granted on April 19, 2020, mandating specific actions to be taken by the DC Department of Corrections (DOC) to improve conditions at the facilities. Id., docs 50(as amended 4/20/20) & 51(Memorandum Opinion). On May 11, amici provided an updated oral report to the Court concerning conditions at the facilities. A motion for preliminary injunction is pending, with briefs due by May 26, 2020. Id., doc. 62. This Court supervision reflects the dire conditions at the DC facilities.

Mr. Fletcher was transferred to the District of Columbia for this case from Maryland, where he is serving a sentence for technical parole violations, with a maximum confinement date of 4/27/22. PSR p. 27, par. 110. He is listed on the Maryland Department of Public Safety and Correctional Sevices (DPSCS) website as assigned to the Patuxtent, MD, facility in Jessup, MD. (Undersigned counsel has been unable to reach any person on the listed phone numbers for the Maryland DPSCS, likely due to pandemic stay-at-home orders for Maryland.) According to a May 11, 2020, DPSCS update, the Patuxtent facility, in Jessup, MD, had 48 covid-19 cases, including residents and staff. The neighboring Jessup Correctional Institution has multiple covid-19 cases, including two deaths from covid-19.

Mr. Fletcher's sentencing is scheduled for June 5, 2020. He has requested that his sentencing date remain, so that he can be transferred from the DC Jail at the earliest opportunity. No one knows when inmates will be transferred, as movement is presently stopped due to possible inmate infection, which could be transferred to other facilities.

For inmates, there is a constant heightened risk of infection, due to the enclosed facilities housing inmates, and close quarters that are shared by inmates and staff. That

heightened risk will not abate, as there is no cure for covid-19, and a vaccine is not expected for, at most optimistic, at least another year. The risk may well be present for many years, and possibly the entire period of his sentence and incarceration.

Mr. Fletcher cannot self-isolate or take other steps to lower the risk of infection which are available to non-incarcerated citizens. And at age 58, Mr. Fletcher faces increasing risk for complications from coronavirus in relation to the younger prison population. (The CDC lists age 65 and above as a high risk factor for infection.) While he does not have identified health disorders from his years-long drug abuse (his medical records have not been received from the DC Department of Corrections), he is certainly at higher risk from coronavirus than the general population, which has not had a lifetime of drug abuse, including its impact on the body.

The stress affiliated with coronavirus for persons who are incarcerated during this time, especially older inmates who cannot voluntarily take steps to distance or otherwise protect themselves, should not be ignored. For example, in United States v. Johnson, DDC 15-cr-125, the Court noted the stressful conditions of incarceration on inmates - like a "warzone" - during the pandemic, in its decision to reduce the defendant's originally imposed sentence during the pandemic. Id., Hearing on Motion to Reduce Sentence, 4/27/20, Tr. p 36. She also noted that Mr. Johnson suffered post-traumatic stress disorder in her decision to reduce his sentence.

The impact of coronavirus on inmates is considered by courts in reducing inmates' incarceration at the pretrial level. See, e.g., Prosecutors Are Opposing the Release of Criminal Defendants in DC During the Pandemic. Some Judges Disagree. Law.com (National Law Journal), April 22, 2020. It is considered by courts in reducing sentences of inmates, as in the Johnson case, supra. And it is considered by the Bureau of Prisons in early release of inmates who are serving sentences under the Bureau of Prisons. See, e.g., Paul Manafort Released from Prison, Granted Home Confinement Due to Coronavirus Fears, Washington Post, May 13, 2020.

### G. *Previous Convictions*

While Mr. Fletcher has a number of previous convictions, he was released to parole

supervision in September, 2016. He did not have any criminal convictions for three years prior to this case. (He had only traffic convictions.) He did initially have jobs during this period, but unfortunately fell back into drug use, initially testing positive in May, 2017 (PSR page 28, par. 110), resulting in his loss of jobs, and contributing to his present case.

### H.     *Circumstances of the Case*

Mr. Fletcher does not want to minimize the seriousness of this case, which is why he immediately accepted responsibility. Fortunately, none of the complainants required medical attention. Again, not to minimize his actions, or their impact on the complainants, but while serious injury was possible, Mr. Fletcher clearly avoided causing injuries to anyone.

### I.     *Sentencing Guidelines Range*

The agreement between the parties under Federal Rule Cr. P. 11( c)(1)( C) reflected the parties' belief that a below-Guidelines sentence is appropriate for the reasons as stated in the parties' sentencing memoranda. While the presentence report indicates a higher U.S. Sentencing Guidelines range than indicated in the plea agreement, the parties were aware of Mr. Fletcher's prior convictions in determining the proposed sentence in the plea agreement, and factors supporting the proposed sentence of 12 years incarceration. The parties remain in agreement that the sentence proposed under the plea agreement is appropriate in this case, and Mr. Fletcher does not take a position opposing the Guidelines as stated in the presentence report.

### J.     *Rehabilitation*

Post-arrest rehabilitation is an important consideration in sentencing under 18 USC § 3553, and can be a basis for variance from the Guidelines. See Pepper v. United States, 562 U.S. 476, 504-5 (2011)(under the factors of 18 USC § 3553, post-conviction rehabilitation may support a downward variance from the Sentencing Guidelines range). In Pepper, supra, the defendant received a downward variance from the U.S. Sentencing Guidelines at his resentencing, due to his extensive rehabilitation efforts after his original sentence. The U.S. Supreme Court stated that a defendant's rehabilitation can be an important factor in sentencing under section 3553 in a

number of ways: For example, evidence of rehabilitation:

> "...may also be pertinent to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2) --in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." §§ 3553(a)(2)(B)-(D); see McMannus, 496 F.3d, at 853 (Melloy, J., concurring) ("In assessing . . . deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct"). Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2)."
>
> Pepper, supra, at 491.

Mr. Fletcher's guilty plea shows both remorse and readiness for rehabilitation.

Mr. Fletcher has learned barbering skills, and continues to enjoy work in that profession. He may be able to employ these skills while incarcerated, and if still able, work in the field after his release.

Mr. Fletcher seeks drug and mental health counseling as available while incarcerated, and after his release. While he has relapsed in the past, it important to note that his addiction started at a very young age, and under those circumstances relapse is, unfortunately, common. Yet he has not given up on himself, and he has the support of a partner who has not given up on him. These are the most important factors in the battle of addiction and recovery.

### K.  *Just Punishment*

A 12-year sentence means that Mr. Fletcher will not be released until he is, at minimum, 70 years old. Given his early acceptance of responsibility, age, and desire to enter into drug and mental health treatment, that sentence is sufficient punishment.

### *III. Conclusion*

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall v. United States, 552 U.S. 38, 52 (2007) citing Koon v. United States, 518 U.S. 81, 113 (1996).

Given Mr. Fletcher's early acceptance of responsibility, desire to enter drug and mental health counseling, age, and impact of the coronavirus pandemic on his health and incarceration, a 12-year sentence is sufficient in this case to protect the public, afford just punishment, and provide for rehabilitation. He requests that the sentence be concurrent to the sentence he is presently serving in Maryland.

Respectfully submitted,

\_\_\_\_\_/s/_____

Joanne D. Slaight, #332866
400 7th Street, N.W., Suite 206
Washington, DC 20004
Phone (202) 408-2041
Email: jslaight@att.net